UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| A.B., | Case No. 2:17-cv-05562-DRH-AYS |
| Plaintiff, | |
| -against- | |
| HOFSTRA UNIVERSITY, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Jill L. Rosenberg
51 West 52nd Street
New York, NY 10019
jrosenberg@orrick.com
(212) 506-5000
Attorneys for Defendant Hofstra University

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................. 2

LEGAL STANDARD ....................................................................................... 5

ARGUMENT .................................................................................................. 6

    I.    PLAINTIFF'S BARE, CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM OF GENDER DISCRIMINATION UNDER TITLE VII .............................................................................................................. 6

    II.   PLAINTIFF'S ALLEGATIONS ALSO FALL SHORT OF STATING A CLAIM UNDER NEW YORK STATE LAW ................................................... 12

CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................5, 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................5, 11

*Brown v. Daikin Am., Inc.,*
    756 F.3d 219 (2d Cir. 2014) .........................................................................12

*Campbell v. New York City Transit Auth.,*
    93 F.Supp.3d 148 (E.D.N.Y.2015) .................................................................7

*Canner v. City of Long Beach,*
    No. 12–cv–2611, 2015 WL 4926014  (E.D.N.Y. Aug. 18, 2015) .......................6

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ......................................................................3, 4

*Doe v. Columbia University,*
    831 F.3d 46 (2d Cir. 2016) ............................................................................8

*Doe v. University of Colorado,*
    No. 16-cv-1789, 2017 WL 2311209 (D. Colo. May 26, 2017) ....................10, 11

*Harrison v. SUNY Downstate Medical Center,*
    No. 16-cv-1101, 2017 WL 4326507 (E.D.N.Y. Sept. 25, 2017) .....................7, 12

*Iscenko v. City of New York,*
    No. 16-cv-6535, 2017 WL 2880553 (S.D.N.Y. July 5, 2017)........................6, 7

*Larkin v. Savage,*
    318 F.3d 138 (2d Cir. 2003)..........................................................................2

*Littlejohn v. City of New York,*
    795 F.3d 297 (2d Cir. 2015)..........................................................................5

*Ludlow v. Northwestern Univ.,*
    125 F.Supp.3d 783 (N.D. Ill. 2015) ..............................................................7, 8

*Rivas Rosado v. Radio Shack, Inc.,*
    312 F.3d 532 (1st Cir. 2002) ........................................................................11

*Soloviev v. Goldstein,*
    104 F.Supp.3d 232 (E.D.N.Y. 2015) ........................................................................7


**Other Authorities**

Civil Rights Act of 1964, Title VII, 42 U.S.C. §§ 2000-e *et seq.* ......................................... *passim*

New York State Human Rights Law .................................................................1, 7, 12

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 5

Education Amendments of 1972, Title IX, 20 U.S.C. A§1681 *et seq.* ....................................10, 11

## **INTRODUCTION**

Plaintiff, who has filed this action under the pseudonym "A.B." due to purported reputational concerns, is a male former employee of Defendant Hofstra University ("Hofstra," "the University" or "Defendant"). During his brief time at Hofstra, Plaintiff was employed (as an at-will employee) as the Director of Tennis and Head Coach of the Men's and Women's tennis teams. Plaintiff's employment was terminated following a complaint made by a female student-athlete.

After his termination, Plaintiff commenced this action by the filing of a Summons and Verified Complaint in the Supreme Court of the State of New York, Queens County on August 25, 2017 alleging that Hofstra terminated his employment because of his gender (male) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e et seq. ("Title VII") and the New York State Human Rights Law ("NYSHRL"). On September 22, 2017, Hofstra removed the case to this Court. (ECF 1).

On November 3, 2017, Hofstra filed a pre-motion letter outlining its intent to file, and the basis for, a motion to dismiss Plaintiff's Complaint for failure to state a plausible claim for relief. (ECF 15). Defendant's pre-motion letter pointed to, among other defects in the Complaint, the complete absence of any factual allegations to support an inference of gender bias in the decision to terminate A.B.'s employment. On November 16, 2017, the Court granted Defendant permission to file a motion to dismiss and set a briefing schedule. In response, Plaintiff hastily tried to marshal "evidence" to salvage his claims and subsequently filed an Amended Complaint on November 24, 2017. (ECF 18).

The Amended Complaint is a poorly veiled attempt to manufacture a claim for gender discrimination in employment where none exists. As explained below, the Amended Complaint is a transparent and ill-fated attempt to shoehorn factual allegations centering on at-will

employee's termination for unprofessional conduct into a distinct line of cases dealing with student-on-student sexual assault and having nothing to do with the matter herein.

Even with these new allegations, Plaintiff's claims cannot survive dismissal. Plaintiff's Amended Complaint is devoid of specific factual allegations suggesting a causal link between the decision to terminate his employment and the fact that he is male. Rather, Plaintiff's allegations here are either merely conclusory, alleged "on information and belief," or otherwise not probative of intentional gender bias against him. In other words, Plaintiff fails to allege facts that give plausible support to a minimal inference of discrimination on the basis of gender as he must do to state a claim under Title VII. Even construed in the most favorable light, Plaintiff has, at most, alleged a failure to follow procedure, which is not actionable under Title VII or any other legal theory.

Therefore, for the reasons described herein, Plaintiff's claim for gender discrimination under Title VII should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's state law claim should also be dismissed because it is analyzed under the same standard.

## BACKGROUND[1]

Hofstra is a private, nonprofit, nonsectarian university with its main campus in Hempstead, New York. As part of its mission, Hofstra provides its student body with a variety of extracurricular athletic opportunities, one of which is intercollegiate tennis. Plaintiff was hired by Hofstra as the Director of Tennis and Head Coach of the Men's and Women's tennis teams in January 2016 as an at-will employee and was terminated later that year, in September 2016, for

---

[1] The facts recited herein are taken from the Amended Complaint and exhibits attached thereto. The Amended Complaint's factual allegations are accepted as true for purposes of this motion. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

unprofessional conduct following a complaint made by a female student-athlete.  At the time of her complaint, the student had just completed her freshman year at Hofstra and was a member of the Women's Tennis team.

According to the Amended Complaint, Plaintiff was first informed of the student's complaint during a meeting in late July 2016, where Plaintiff was presented with a July 22, 2016 letter to the University from an attorney representing the student.  Amended Compl. ¶¶ 20-26 and Exhibit A thereto.  The letter alleged that Plaintiff had engaged in a number of non-physical acts constituting sexual harassment, including electronic, social media and verbal communications with the student.  Amended Compl., Exhibit A.  By Plaintiff's own admission, during this meeting he requested and was given a copy of the July 22 letter (Exhibit A) and he then provided verbal responses to the allegations set forth in the letter.   Amended Compl. ¶ 27.  Among the allegations in the letter were that Plaintiff had "friended" the student on Facebook, commented (on Valentine's Day just after midnight) via Facebook on a photo the student had posted of herself standing in front of the LOVE statue in New York City, and sent her a private Facebook message attaching a YouTube video entitled "Casually Explained:  Is She Into You?" Amended Compl. Exhibit A, at pp. 2-3.  The letter also attached screenshots of these communications which are attached as Exhibit 1 to the accompanying Declaration of Jennifer M. Mone.[2]  These Facebook postings alone establish the legitimate grounds for termination of Plaintiff's at-will employment.

---

[2] Plaintiff specifically references and attaches to his Complaint as "Exhibit A" a copy of the student's July 22 letter, but has conspicuously omitted the attachments to the letter, including the screenshots of the Facebook communications, which are a material and integral part of that document and thus, the Amended Complaint.  For the sake of completeness, we are providing the Court with copies of the attachments to Plaintiff's Exhibit A, redacting personally identifying information relating to the student and A.B. (See Declaration of Jennifer M. Mone, Exhibit 1.)  As Plaintiff explicitly references and relies upon Exhibit A in his Amended Complaint, this Court may consider Exhibit A, as well as the attachments he omits, in connection with this motion.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (court may consider on a motion

At the conclusion of the meeting, Plaintiff was asked to provide copies of all of his communications with the student. Amended Compl. ¶ 28. According to Plaintiff, following the meeting, he provided to Hofstra copies of all the emails and text messages between him and the student, along with an explanation disputing the time frames described in the student's letter. *Id.* ¶ 30. Plaintiff also provided the names of team members that he thought could provide helpful information regarding the matter. *Id.* ¶ 32. Plaintiff also engaged legal counsel (his current counsel). *Id.* ¶ 34.

On September 7, 2016, Plaintiff was informed in a meeting with Hofstra's Director of Human Resources that his employment was being terminated for "unprofessional conduct." *Id.* ¶ 43.

Plaintiff alleges "[u]pon information and belief," that despite: (1) being provided with a complete copy of the student's July 22 complaint letter, (2) providing verbal responses to the allegations contained therein, (3) meeting again with a Hofstra representative to provide copies of his communications with the student and to explain how they supported his version of the events, and (4) providing names of team members for Hofstra to interview, Hofstra failed to properly investigate the female student's claim and did not follow its EEO (equal employment opportunity) procedures for handling such claims, and that Hofstra reached an incorrect conclusion contrary to the evidence. *Id.* ¶¶ 37-39, 44. Plaintiff further alleges that Hofstra's decision to terminate his employment was motivated by a "raw bias against Plaintiff based on his gender." *Id.* ¶ 44. Finally, Plaintiff alleges that "[u]pon information and belief, these actions were taken by Hofstra personnel who were exclusively women and were biased against Plaintiff because of his gender; upon

---

to dismiss the complaint, any instrument attached to it as an exhibit, materials incorporated by reference, and documents that, although not incorporated by reference, are integral to the complaint) (quotations and citations omitted*)*.

information and belief, [Vice President and Director of Athletics Jeffrey] Hathaway's involvement in the process was purely nominal." *Id.* ¶ 48.

## LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679 (citations omitted). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (internal citations omitted).

In addition, to survive a motion to dismiss in a Title VII case, a plaintiff must allege facts in the complaint that "give plausible support to a minimal inference of discriminatory motivation" on the part of the employer. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

"Naked assertions of ... discrimination ... without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss." *Canner v. City of Long Beach*, No. 12–cv–2611, 2015 WL 4926014 at *8 (E.D.N.Y. Aug. 18, 2015) (internal quotation marks and citations omitted). Applying these standards, Plaintiff's Amended Complaint falls woefully short of his pleading requirements.

## ARGUMENT

### I.   PLAINTIFF'S BARE, CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM OF GENDER DISCRIMINATION UNDER TITLE VII

Plaintiff's Amended Complaint is devoid of specific factual allegations suggesting a causal link between the decision to terminate his employment and his gender. Although Plaintiff's causes of action are ostensibly based on alleged gender discrimination, the only allegations in the Amended Complaint that even touch on gender are either: (a) sweeping generalizations unsupported by any factual allegations, or (b) his hastily-added and irrelevant claims about an atmosphere of concern on college campuses regarding student-on-student sexual assault (*see* Amended Compl. ¶¶ 50-54). As discussed further below, these allegations are insufficient to state a claim for gender discrimination under Title VII.

Plaintiff's Amended Complaint lays out factual allegations in an effort to show that he was not treated fairly and that Hofstra failed to follow internal processes with respect to investigating the student's claims.[3] Then, without pointing to any circumstantial evidence or logical connection

---

[3] Plaintiff's allegations that Hofstra failed to properly investigate the female student's claim, did not follow its EEO procedures for handling such claims, or reached an incorrect conclusion contrary to the evidence (*see* Amended Compl. ¶ 48) are not probative of gender bias against him. *See Iscenko v. City of New York*, No. 16-cv-6535, 2017 WL 2880553 at *5 (S.D.N.Y. July 5, 2017) (granting motion to dismiss Title VII and Section 1983 race discrimination claims and observing that "departures from procedural regularity" can raise questions "as to the good faith of the

giving rise to a claim of gender bias, Plaintiff makes a conceptual leap and alleges in a conclusory fashion that Hofstra's decision to terminate his employment was motivated by a "raw bias against Plaintiff based on his gender." Amended Compl. ¶ 44.   These sparse factual allegations and sweeping claim that Hofstra's actions were motivated by what Plaintiff believes was gender bias are precisely the sort of unsubstantiated allegations that courts in this judicial Circuit and elsewhere have routinely found insufficient to state a plausible claim for gender bias under Title VII and other employment discrimination laws. *See e.g., Harrison v. SUNY Downstate Medical Center*, No. 16-cv-1101, 2017 WL 4326507 at *5 (E.D.N.Y. Sept. 25, 2017) (granting motion to dismiss gender discrimination under claims Title VII and NYSHRL, holding that plaintiff's "subjective belief of gender discrimination is not sufficient to support the inference that defendants discriminated against her based on her gender"); *Soloviev v. Goldstein*, 104 F.Supp.3d 232, 248-49 (E.D.N.Y. 2015) (granting motion to dismiss Title VII and NYSHRL discrimination claims by former male swim team coach, noting that plaintiff failed to show a link between his termination and a protected class and has "done no more than point to various ways in which [he] feels he was mistreated and argue that it must have been because of his gender, race, and national origin") (internal quotation marks omitted); *Campbell v. New York City Transit Auth.*, 93 F.Supp.3d 148, 173 (E.D.N.Y.2015) ("Plaintiff has done no more than point to various ways in which she feels she was mistreated and argue that it must have been because of her sex, age, or disability. This is not sufficient to sustain a claim of discrimination."); *Ludlow v. Northwestern Univ.*, 125 F.Supp.3d 783 (N.D. Ill. 2015) (granting motion to dismiss male professor's gender discrimination claims, holding that his assertion "that he was denied fair procedures during the investigation [of a sexual

---

process" but "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent") (internal quotation marks and citations omitted).

harassment claim] 'because he is male' is the kind of conclusory statement that courts reject as insufficient to plead this claim" and that his allegation "that Northwestern treated him, as a male, differently from the female victim is insufficient to establish a [gender discrimination] claim.")

Plaintiff's new allegations in the Amended Complaint, under the heading "Hofstra's Motivation for Gender Bias" (Amended Compl. ¶¶ 50-54) are an obvious after-the-fact ploy to create evidence of anti-male bias with regard to Plaintiff where none exists. Specifically, Plaintiff is trying to align his case, which involves an at-will male employee terminated for unprofessional conduct after accusations by a female student of non-physical sexual harassment, with the claims in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016), in which a male student challenged the decision of Columbia to discipline him for an alleged sexual assault committed against another student. In particular, Plaintiff tries to replicate in the present case factual allegations that the *Doe* court found to support a plausible claim for gender bias by the male student, including that "during the period preceding the [male student's] disciplinary hearing,[4] there was substantial criticism of [Columbia] both in the student body and in the public media, accusing [Columbia] of not taking seriously complaints of female students alleging sexual assault by male students." *Doe*, 831 F.3d at 57.

Toward this end, it appears that following receipt of Hofstra's pre-motion letter, which cited *Doe* (on a different issue) and pointed to the complete absence of evidence to suggest anti-male bias against Plaintiff, Plaintiff conducted a far-flung internet search for any media mentions of Hofstra and the issues of sexual harassment or assault on college campuses. The results of this search are reflected in the Amended Complaint through quotes from a handful of irrelevant articles,

---

[4] Plaintiff even attempts to mirror the language of *Doe*. See Amended Compl. ¶ 51 ("*In the period preceding* the July meeting…") (emphasis added).

some more than a year-and-a-half before the events at issue in this case, and which Plaintiff selectively quotes or otherwise mischaracterizes.[5]   Broadly speaking, the articles discuss the important, but distinct, issue of student-on-student sexual assault and rape on college campuses generally.[6]  Further, the articles do not support Plaintiff's contention that the decision to terminate his employment in September 2016 occurred in "an atmosphere of harsh criticism" of Hofstra for "not taking complaints of sexual harassment and misconduct seriously."  Amended Compl. ¶ 50.

For example, the Amended Complaint (¶ 51) refers to (and selectively quotes) two articles from the student-run newspaper, *The Hofstra Chronicle*, a student "letter to the editor" in November 2014, and a student editorial published in March 2015.[7]  Aside from the fact these pieces long pre-date the student's complaint about Plaintiff (in July 2016) and thus were not "[i]n the period preceding the July [2016] meeting," (Amended Compl. ¶ 51), they each deal with the issue of male student behavior and student-on-student sexual assault.  These allegations do not shed any light on Hofstra's possible motivation here, in a situation involving a newly hired at-will

---

[5] Despite (selectively) quoting from and otherwise relying on these articles, Plaintiff conspicuously omits them from his Amended Complaint. To the extent we refer to any of the articles herein, we have provided hyperlinks to them.

[6] *See, e.g.*, Amended Compl. ¶ 53, referring to a December 3, 2014 *Washington Post* article discussing some of the conditions on college campuses (drinking, fraternities and students living in close quarters) that may contribute to sexual misconduct by young male college students, *The Washington Post*: One in 5 girls will be sexually assaulted in college. Here's how to help change that. (December 3, 2014). (https://www.washingtonpost.com/blogs/local/wp/2014/12/03/one-in-five-girls-will-be-raped-in-college-eight-steps-parents-can-take-to-change-that/?utm_term=.414f597d1022).

[7] *See Chronicle*, Letter to the Editor:   Response to "To prevent sexual assault, we must reevaluate views on sex" (November 18, 2014) (responding to prior article that argued that the hookup culture was one of the leading causes of student-on-student sexual assault on campus and suggesting that "sexual assault is fostered by a society that tells some men they can act with impunity.  But it is not casual sex.")  (http://thehofstrachronicle.com/letter-editor-response-prevent-sexual-assault-must-reevaluate-views-sex/); *Chronicle*,  It's On Us Fails to Discuss Sexual Assault (March 3, 2015) (editorial criticizing event launching campus initiative to discuss issue of student-on-student sexual assault and rape on college campuses with writer observing that "Hofstra chose to be coyly quiet" about event). (http://thehofstrachronicle.com/its-on-us-fails-to-discuss-sexual-assault/).

employee (not another student) and allegations of inappropriate remarks and electronic communications (not of sexual assault, rape, or any physical or sexual contact).

Plaintiff also points to national media attention (again on the issue of sexual assault among students), arguing that Hofstra's past presence on long lists of schools with Title IX investigations and that provide data (required by federal law) on the number of rape allegations on campus is somehow probative of Hofstra's motivation here.[8]   Amended Compl. ¶ 52.   These media mentions of Hofstra are insufficient as well to tie Hofstra's alleged treatment of Plaintiff to his sex.   The speculative nature of these allegations is best illustrated by Plaintiff's own pleading:   after describing these various articles and media mentions of Hofstra, the best Plaintiff can do is allege that *"[o]n information and belief,* these factors motivated Hofstra's decision-makers, all of whom were women, to take a hard line against men…to improve Hofstra's perceived stance on sexual harassment." (Emphasis added).   Amended Compl. ¶ 54.   Such speculation is insufficient to raise a plausible inference of intentional gender discrimination against Plaintiff.

Finally, to the extent that Plaintiff claims that the termination decision was made by exclusively-female decision makers and that this, in and of itself, raises an inference of gender discrimination, this line of reasoning is flawed and should be rejected.   Courts have "rejected the argument that gender uniformity, without more, leads to an inference of gender bias."   *See e.g., Doe v. University of Colorado*, No. 16-cv-1789, 2017 WL 2311209 at *10 (D. Colo. May 26,

---

[8] *See Huffington Post,* A Number of Colleges Are Under Scrutiny For Sexual Harassment, But You Wouldn't Know It (May 19, 2015) (listing nearly 100 institutions with a pending Department of Education Title IX investigation, one of which was Hofstra) (https://www.huffingtonpost.com/2015/05/19/colleges-sexual-harassment_n_7309444.html); *The Washington Post:* These Colleges Have the Most Reports of Rape (June 7, 2016) (listing of number of rapes reported by hundreds of institutions for 2014, including Hofstra, per federal reporting requirements)   (https://www.washingtonpost.com/news/grade-point/wp/2016/06/07/these-colleges-have-the-most-reports-of-rape/?utm_term=.019b217c1993).

2017) (male plaintiff's allegations that the university "employed an all-female Title IX team" in its investigation did not raise plausible inference of gender bias against him) (internal quotation marks and citations omitted); *see also Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002) ("The mere fact that the decision makers were male does not alone, absent other evidence, create an inference that they engaged in gender discrimination [against a female employee]").

In any event, Plaintiff's claim of "gender uniformity" is not plausible in light of Plaintiff's factual allegations to the contrary.   Plaintiff admits that his superior, Hofstra's Vice President and Director of Athletics, Jeffrey Hathaway, was present and participated in the interview of Plaintiff on July 22, spoke with Plaintiff about the investigation several times thereafter and was present at the September 7 meeting, immediately following which Plaintiff was terminated.   Amended Compl. ¶¶ 20, 35, and 40.   Faced with these undisputed facts, Plaintiff attempts to bolster his "gender uniformity" claim by alleging that "[u]pon information and belief, these actions were taken by Hofstra personnel who were exclusively women and were biased against Plaintiff because of his gender; upon information and belief, Hathaway's involvement in the process was purely nominal." Amended Compl. ¶ 48.   Yet, Plaintiff's own admissions regarding Hathaway's role in the events leading up to his termination negates this theory.   Plaintiff's bald assertion that Hathaway's involvement was "purely nominal" has no support elsewhere in the Amended Complaint and is an example of the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555).

## II.     PLAINTIFF'S ALLEGATIONS ALSO FALL SHORT OF STATING A CLAIM UNDER NEW YORK STATE LAW

Discrimination claims under the NYSHRL are analyzed under the same standard as a Title VII claim. *See Harrison v. SUNY Downstate Medical Center*, No. 16-cv-1101, 2017 WL 4326507 at *4 (E.D.N.Y. Sept. 25, 2017) ("The NYSHRL mirrors these federal obligations.") (*quoting Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). For the reasons explained above, the allegations in Plaintiff's Amended Complaint also fail to state a claim under New York state law.

## CONCLUSION

For the reasons described above, Defendant requests that the Court enter an order granting Defendant's Motion to Dismiss the Amended Complaint and dismiss with prejudice all of Plaintiff's claims under Title VII and the NYSHRL.

Dated:  December 15, 2017
     New York, New York

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  _Jill L. Rosenberg_

Jill L. Rosenberg
51 West 52nd Street
New York, NY  10019
jrosenberg@orrick.com
(212) 506-5000

Attorneys for Defendant Hofstra University