UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEFFREY MENAKER,

                          Plaintiff,                      **MEMORANDUM AND ORDER**
                                                          2:17-cv-5562 (DRH)(AYS)


     - against –


HOFSTRA UNIVERSITY

                          Defendant.
-------------------------------------------------------X

**APPEARANCES**

**OFFIT KURMAN, P.A.**
Attorneys for Plaintiff
10 East 40th Street
New York, NY 10016
By:     Cheryl L. Davis, Esq.
        Theodor D. Bruening, Esq.

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Attorney for Defendant
51 West 52nd Street
New York, NY 10019
By:     Jill L. Rosenberg, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Jeffrey Menaker ("Plaintiff") brought this action against Hofstra University

("Defendant" or "Hofstra"), for gender discrimination under Title VII of the Civil Rights Act of

1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human

Rights Law ("NYCHRL"). Presently before the Court is Defendant's motion to dismiss for

failure to state a claim pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). For the reasons explained

below, the motion to dismiss is granted.

**BACKGROUND**

The following relevant facts come from the Amended Complaint and are assumed true.

On or about January 15, 2016, Hofstra hired Plaintiff as the Director of Tennis and the Head Coach of the men's and women's varsity tennis teams. (Amended Compl. ("Compl.") [DE 18] ¶ 4.) Plaintiff alleged that he inherited the "annual allocation of athletic scholarship funds to members of the tennis teams" from his predecessor. (*Id.* ¶ 6.)

In late April 2016, just before the season-ending conference tournament, a first-year student ("Student") approached Plaintiff to confirm that her scholarship would be increased from 45% to a full athletic school year. (*Id.* ¶ 7.) The Student claimed that this increase had been promised by Plaintiff's predecessor. (*Id.*) Plaintiff said he was not aware of the promise, but that he would investigate. (*Id.*) He conversed with his supervisor, Alyssa Morales-Kelly ("Kelly"), who confirmed that the Department had no record of a promise to increase the scholarship. (*Id.* ¶ 9.) Plaintiff then informed the Student that he could not increase her scholarship for her sophomore year, but he could give her a full scholarship for her junior and senior years. (*Id.* ¶ 10.) In May 2016, the Student's father called Plaintiff and yelled at him on the phone about the scholarship situation. (*Id.* ¶ 11.) Plaintiff reported the call to Kelly. (*Id.* ¶ 12.)

That same month, the Student visited Plaintiff's office to inform him that she could no longer afford to attend Hofstra. (*Id.* ¶ 13.) The Student later called Plaintiff to ask him to "release" her under the NCAA rules so she could transfer to another University and tennis program. (*Id.* ¶ 15.) Plaintiff and the Student texted back and forth regarding whether she would look for another school, under which circumstance Plaintiff informed the Student that he would rescind the offer for a full scholarship for her junior and senior years. (*Id.* ¶¶ 17–19.) In June

2016, the Student informed Plaintiff that she had decided to return to Hofstra for her sophomore year.  (*Id.* ¶ 20.)  Around this same time, Hofstra Athletic Department administered anonymous reviews of the coaching staff.  (*Id.* ¶ 14.)  Thereafter, Plaintiff met with Kelly to discuss the reviews, which she said were all positive.  (*Id.*)

In July 2016, Plaintiff was summoned to the office of the Deputy General Counsel, Jennifer Mone ("Mone"), along with the Vice President and Director of Athletics, Jeffrey Hathaway ("Hathaway").  (*Id.* ¶ 20.)  Mone asked Plaintiff about his methods of communicating with students, and then presented him with a letter Defendant had received from the Student's attorney.  (*Id.* ¶¶ 22–23.)  The letter laid out several accusations against Plaintiff, including but not limited to: (1) that the Student had been "subjected to unwanted and unwarranted sexual harassment" by Plaintiff; (2) that Plaintiff "had a strange obsession with [the Student's] menstrual cycle, and would repeatedly comment about when [the Student] was getting her period[;]" (3) that Plaintiff was inappropriately concerned with the physical appearance and presentation of women on the team; and (4) that Plaintiff had screamed obscenities and verbal abuse at female players on opposing teams.  (*Id.* ¶¶ 24–25 (quoting Letter from David Schwartz, Esq. to Office of the President, Hofstra Univ. (July 22, 2016) Ex. A to Compl.) (internal quotation marks omitted).)  During that meeting, Plaintiff denied the claims.  (*Id.* ¶ 27.)  Plaintiff later provided all of his communications with the Student to the University.  (*Id.* ¶ 30.)  Plaintiff insists that these communications contradict the Student's allegations.[1]  (*Id.* ¶.)  Plaintiff claims that "upon information and belief" Hofstra did not investigate the complaint or interview the Student's teammates.  (*Id.* ¶ 39.)

---

[1] Plaintiff did not provide the Court with these communications.

On September 7, 2016, Plaintiff was called to a meeting with Hofstra's Director of Human Resources, Evelyn Miller-Suber ("Miller"). (*Id.* ¶ 40.) The meeting also included Mone and Hathaway. (*Id.*) At this meeting, Mone repeated the allegations made against Plaintiff that were discussed in the prior meeting, and also shared that Plaintiff had been accused of making comments to his students about his divorce. (*Id.* ¶ 42.) Miller then informed Plaintiff that he was fired for "unprofessional conduct" based on the totality of the allegations. (*Id.* ¶ 43.)

Plaintiff brought the instant action on September 22, 2017. Defendant filed the instant motion to dismiss on January 12, 2018.

## LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## DISCUSSION

I.  *Gender Discrimination Under Title VII*

    a.  Title VII

"Title VII prohibits discrimination . . . because of . . . sex in the terms or conditions of employment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79–80 (1998) (internal quotation marks omitted). Thus, "[a]n employment decision . . . violate[s] Title VII when it is based in whole or in part on discrimination." *Joseph v. Owners & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 307 (E.D.N.Y. 2014) (quoting *Holcomb v. Iona College*, 521 F. 3d 138, 152 (2d Cir. 2004)).

To establish a *prima facie* case for employment discrimination, a plaintiff must show that "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred

under circumstances giving rise to an inference of discriminatory intent." *Joseph*, 5 F. Supp. 3d at 308 (quoting *Brown v. City of Syracuse*, 673 F. 3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted)); *see also Mills v. S. Connecticut State Univ.*, 519 Fed. Appx. 73, 75 (2d Cir. 2013).

      b.   The Motion to Dismiss Plaintiff's Title VII Claim is Granted

As explained above, "at the pleading stage . . ., a plaintiff has a 'minimal burden" of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 310.). However, "naked assertions of discrimination without any specific factual allegations of a causal link between the defendant['s] conduct and the plaintiff's protected characteristics are too conclusory to withstand a motion to dismiss." *Doe v. Columbia Univ.*, 2015 WL 1840402, at *7 (S.D.N.Y. Apr. 21, 2015).

Here, there is no dispute over the first three elements of a prima facie case for discrimination; namely, that Plaintiff belongs to a protected class, that he was qualified for the position he held, and that he suffered an adverse employment action. *See Smith v. AVSC Intern., Inc.*, 148 F. Supp. 2d 302, 311–12 (S.D.N.Y. 2001) ("[Plaintiff] falls within a protected class . . . as a white male"); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279 (1976). Therefore, the only question is whether the circumstances give rise to an inference of discrimination.

The Second Circuit has explained,

[I]t is well settled than an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's criticism of the plaintiff's performance in [ ] degrading terms [related to the protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment

of [similarly situated] employees not in the protected group; or the sequence
of events leading to the plaintiff's discharge.

*Bivens v. Inst. for Cmty. Living, Inc.*, 2015 WL 1782290, at \*8 (S.D.N.Y. Apr. 17, 2015) (citing

*Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)) (internal quotation marks, ellipses, and

citations omitted).

Here, Plaintiff claims that he was wrongfully terminated because he is a man, after "false

accusations" of inappropriate conduct toward one of his female team members (as well as female

members of opposing teams) were brought against him.  Plaintiff insists that Defendant failed to

conduct a thorough investigation into the claims, and that Defendant violated its own policies in

the way Defendant's employees handled his termination.  (*See, e.g.*, Compl. ¶¶ 45–48.)

Even assuming that Plaintiff's recitation of all of the relevant facts is true, as the Court

must do on a motion to dismiss, there are no allegations in the Amended Complaint that give rise

to a plausible inference that Plaintiff's termination was related to his gender.  Rather, it is

apparent that Plaintiff was terminated based on the allegations of "unprofessional conduct"

brought against him.  (*Id.* ¶ 43.)  There is nothing in the record that would suggest that the

circumstances would have been different if Plaintiff had been a woman who had been accused of

the same misconduct toward a young student.

The primary argument Plaintiff proffers in support of his claim of gender discrimination

is that the people who made the decision to terminate his employment were all women.  (*Id.* ¶

54.)  First, and foremost, the mere fact that a decisionmaker does not share a protected

characteristic with an aggrieved employee does not give rise to a claim of discrimination.  *See*

*Morrison v. Dr. Pepper Snapple Group*, 916 F. Supp. 2d 372, 374 (W.D.N.Y. 2013) (quoting

*Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532, 534 (1st Cir. 2002)) ("The mere fact that the

decision makers were male does not alone, absent other evidence, create an inference that they

engaged in gender discrimination [against a female employee]").  Second, based on Plaintiff's

own telling, it is untrue that he was terminated by a group of women.  The Amended Complaint

states that Hathaway (a man) was Plaintiff's direct supervisor, was present at the initial meeting

and the termination meeting, and was involved in some capacity in Plaintiff's termination.  (*Id.*

¶¶ 20 ("In late July 016, Plaintiff was summoned to the office of the General Counsel . . . along

with Jeffrey Hathaway"), 40 ("On September 7, 2017[], Plaintiff was instructed to attend a

meeting . . . . Hathaway was also present"), 41 (stating that Hathaway listened to Mone's recital

of the "false" allegations silently at the September meeting), 43 (stating only that Mone left the

September meeting, after which point Plaintiff was terminated), 48 (conceding that Hathaway

was involved in the termination process but insisting that his role was "purely nominal").)

Plaintiff's other attempt to draw a connection between his termination and discriminatory

animus toward him as a male is similarly unavailing.  Plaintiff pontificates that at the time of his

termination there was an "atmosphere of harsh criticism of colleges and universities generally,

and Hofstra in particular, for allegedly not taking complaints of sexual harassment and

misconduct against women seriously."  (*Id.* ¶ 50.)  However, Plaintiff fails to show that this

supposed general atmosphere had any bearing on the circumstances surrounding his own

termination.  Even if Defendant had a policy of treating sexual harassment accusations with

greater weight than other types of harassment accusations, which Plaintiff does not allege, this

does not lead to the inference that Plaintiff's gender was the basis for his termination.

The linchpin of Plaintiff's argument is that the facts here are analogous to the facts in

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016).  In *Doe*, the Second Circuit found that a

male student who had been suspended based on allegations of sexual assault had adequately

pleaded facts that plausibly supported at least a minimal inference of sex bias on the part of the

university.  *See id.*  However, the facts in this case are distinguishable from those in *Doe*.  First, *Doe* concerned accusations of student-on-student sexual assault, not harassment and unprofessional conduct by an at-will employee against students on his team and other teams.  Moreover, in *Doe*, the plaintiff alleged that the person assigned to investigate the matter was hostile toward him, that in other similar situations this investigator had demonstrated that she "was not gender neutral," that plaintiff was subjected to "cross-examination calculated to elicit a confession," and that plaintiff observed that the notes taken during his questioning "inaccurately and inadequately paraphrased [plaintiff's] verbal account of the events."  831 F.3d at 49.  By comparison, Plaintiff never alleges that Mone, Hathaway, or Miller were hostile to him.  Nor does Plaintiff allege that they tried to corner him into a confession, that they twisted or falsified his statements, or that any of the three of them had a history of treating men poorly in similar situations.  Based on the allegations in the Amended Complaint, it seems that Money, Hathaway, and Miller were nothing but professional and level-headed in all of their interactions with Plaintiff.  Moreover, there is not a single allegation that Defendant or Defendant's employees had any history of treating men in a discriminatory manner.

Additionally, in *Doe* the Court found that the investigator's failure to "act in accordance with University procedures designed to protect accused students" supported the inference of sex discrimination.  *Id.* at 56.  In the case at bar, on the other hand, there was no departure from procedure.  Plaintiff cites to Hofstra's "Harassment Policy" in support of his claim that he was entitled to an investigation and a written determination.  (*See* Compl. ¶¶ 45–48; Hofstra Harassment Policy Ex. B to Compl. [DE 18-2].)  However, in Plaintiff's own words, he was fired for "unprofessional conduct"—not harassment.  (*Id.* ¶ 43.)  Even if Plaintiff's actions did fall within the parameters of the Harassment Policy, the allegations in the Amended Complaint

suggest that Defendant comported with the "Informal Procedure" laid out in such Policy.[2]  (*See* Harassment Policy § III(C) Ex. B. to Compl.)

Finally, in *Doe*, the controversy that was the subject of the case reached the press amid a crescendo of articles about sexual assault and harassment at Columbia University in particular. The Second Circuit found that the press coverage made it "entirely plausible that the University's decision-makers, and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault."  831 F.3d at 57.  Here, Plaintiff does not allege that there were any articles about his case, nor does he allege that there were any articles specifically about Hofstra.  Rather, he claims that Hofstra was mentioned in articles that listed colleges with incidences of rape, or colleges that had mishandled accusations of sexual assault. (Compl. ¶ 52.)  Press coverage of sexual assault at a university does not automatically give rise to an inference that a male who is terminated because of allegations of inappropriate or unprofessional conduct is the victim of gender discrimination; especially absent any other facts plausibly alleging discriminatory animus.  Here, there are no instances of "degrading terms" about Plaintiff as a man, invidious comments about other men, or the more favorable treatment of women.  *See Bivens*, 2015 WL 1782290, at *8 (citing *Patane*, 508 F.3d at 112).  Accordingly, Plaintiff has failed to state a claim under Title VII, and this claim must be dismissed.

---

[2] The Court may review and consider the Harassment Policy, including the section regarding the Informal Procedure, as it is attached as Exhibit B to the Amended Complaint.  *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 2011 WL 2610661, at *3 (S.D.N.Y. June 27, 2011) ("In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint[.]")

## II. Gender Discrimination Under the NYSHRL

### a. Legal Standard

The NYSHRL provides in relevant part that it is an unlawful discriminatory practice:

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

As with Title VII claims, at the pleading stage of a NYSHRL discrimination claim, a plaintiff has only a "minimal burden" of alleging facts "suggesting an inference of discriminatory intent." *Vega*, 801 F. 3d at 85.

### b. The Motion to Dismiss Plaintiff's NYSHRL Discrimination Claim is Granted

NYSHRL gender discrimination claims are analyzed under the same framework as gender discrimination claims brought pursuant to Title VII. *See Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015). Plaintiff's allegations concerning discrimination are the same for both his federal and state claims. Therefore, again, Plaintiff has failed to state a claim for wrongful termination. As such, Defendant's motion is granted as to Plaintiff's NYSHRL gender discrimination claim.

## III. Gender Discrimination Under the NYCHRL

Plaintiff states in the introduction to the Amended Complaint that he brings this action pursuant to Title VII, the NYSHRL, and the NYCHRL. (Compl. ¶ 1.) However, the NYCHRL is not mentioned again anywhere in the Amended Complaint, nor is it listed as one of the grounds for recovery. (*See id.* ¶¶ 57–68 (only setting out claims for relief under Title VII and the NYSHRL).) The NYCHRL is also never referenced in Plaintiff's Memorandum in Opposition. Accordingly, the Court considers this argument abandoned.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is

granted as to all claims..  The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
        September 26, 2018

_____/s/_____
Denis R. Hurley
Unites States District Judge